WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorneys Appearing: Leslie S. Barr (lbarr@windelsmarx.com)
　　　　　　　　　　Robert G. Wilk (rwilk@windelsmarx.com)

*Attorneys for Federal National Mortgage Association, Plaintiff*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

MICHAEL I. FISCHMAN,
SHOSHANNA FISCHMAN,

　　　　　　　　　Debtors.
---------------------------------------------------------x
FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

　　　　　　　　　Plaintiff,

　- against -

MICHAEL I. FISCHMAN and
SHOSHANNA FISCHMAN,

　　　　　　　　　Defendants.
---------------------------------------------------------x

Chapter 7

Case No. 10-44189 (CEC)

Adv. Proc. No. 11-　　(CEC)

### COMPLAINT FOR JUDGMENT (A) DETERMINING DEBTORS' OBLIGATIONS TO FEDERAL NATIONAL MORTGAGE ASSOCIATION TO BE NON-DISCHARGEABLE, AND (B) DENYING DEBTORS' DISCHARGES

Federal National Mortgage Association ("**Fannie Mae**" or "**Plaintiff**"), by its undersigned counsel Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), for its Complaint against Defendants, upon knowledge with respect of its own acts and upon information and belief with respect to all other matters, alleges as follows:

{10638972:2}

**Nature of the Action**

1.  Plaintiff commences this adversary proceeding under sections 523 and 727 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**") and Rule 7001(4) and (6) of the Federal Rules of Bankruptcy Procedure for judgment against Defendants (a) determining that Defendants' debts to Plaintiff are not dischargeable, and (b) denying Defendants' discharges.

2.  Defendants' debts to Plaintiff are not dischargeable under Bankruptcy Code § 523(a)(6) because Defendants willfully and maliciously converted collateral in which Plaintiff had an interest, thereby injuring Plaintiff.

3.  Defendants' discharges should be denied (a) under Bankruptcy Code § 727(a)(2)(A) for transferring, removing, or permitting to be transferred or removed property of the debtors within one year before their Petition Date (defined below) with intent to hinder, delay, or defraud Plaintiff, (b) under Bankruptcy Code § 727(a)(2)(B) for their continuing post-Petition Date failure to turnover property of the estate with actual intent to hinder, delay, or defraud Plaintiff, and (c) under Bankruptcy Code § 727(a)(6) for their refusal to obey a lawful order of the Court.

**Jurisdiction and Venue**

4.  The Court has jurisdiction over this Complaint under 28 U.S.C. §§ 157 and 1334 and the standing order titled *In the Matter of the Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186 (E.D.N.Y. 1986) (Weinstein, C.J.). Venue of this case and this Complaint in this District is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

**The Parties**

5.  Plaintiff is a corporation organized and existing under the laws of the United

States and a creditor of the Defendants.

6. Defendants are the Debtors herein.

### Procedural Background

7. On May 7, 2010 (the "**Petition Date**"), the Debtors filed their joint voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

8. On July 15, 2010, Plaintiff filed a motion for relief from the automatic stay. [ECF Doc. No. 30].

9. On August 26, 2010, the Court entered an Order granting Plaintiff's motion for relief from the automatic stay (the "**Automatic Stay Order**"). [ECF Doc. No. 48]. A copy of the Automatic Stay Order is attached and made a part hereof as Exhibit A.

10. On August 26, 2010, Plaintiff filed Proof of Claim No. 26 against Defendants (the "**Claim**").

11. On November 3, 2010, the Court entered an Order converting the Debtors' chapter 11 case to a case under chapter 7 of the Bankruptcy Code. [ECF Doc. No. 63].

12. Pursuant to a Stipulation and Order entered by the Court on March 14, 2011, the last day to oppose the Debtors' discharge or the dischargeability of their debts was extended from February 9, 2011 to April 24, 2011.[1]

### Facts

13. Yakaputz II, Inc. ("**Yakaputz**"), is a New York corporation having an address at 254 Fort Hill Road, Scarsdale, New York 10583.

14. According to their Schedule B – Personal Property, Defendants are the sole

---

[1] Since April 24, 2011 is a Sunday, under Bankruptcy Rule 9006(a), the last day to oppose discharge or dischargeability is Monday, April 25, 2011.

{10638972:2}   3

shareholders of Yakaputz. Defendant Michael Fischman is the President of Yakaputz.

15. Yakaputz owns real property that is improved by a ten-family residential apartment building located at 195A Washington Park, Brooklyn, New York (the "**Yakaputz Property**").

16. On or about September 27, 2007, Yakaputz executed and delivered to Arbor Commercial Funding, LLC ("**Arbor**"), an *Amended and Restated Multifamily Note* (the "**Note**") evidencing a loan made to it in the original principal amount of $1,587,200.00, payable with interest as provided therein.

17. To secure payment of that indebtedness, Yakaputz, as mortgagor, duly executed, acknowledged and delivered that certain mortgage titled *Multifamily Mortgage Assignment of Rents and Security Agreement*, dated as of September 27, 2007, and as modified by that certain *Consolidation, Extension and Modification Agreement* dated as of September 27, 2007 (the "**Mortgage**"), wherein and whereby Yakaputz, as mortgagor, mortgaged the Yakaputz Property to Arbor. The Mortgage was duly recorded in the City Register's Office on October 4, 2007, as New York City Register File Number 2007000506982, and all applicable mortgage recording taxes were duly paid in full at the time of recording.

18. The Note was endorsed to the order of Plaintiff (the "**Endorsement**"), which Endorsement is attached to the Note and made a part thereof.

19. Arbor assigned the Mortgage to Plaintiff by that certain *Assignment of Mortgages as Consolidated* dated as of September 27, 2007 (the "**Assignment**"). The Assignment was duly recorded in the Clerk's Office on October 4, 2007, as New York City Register File No. 2007000506983.

20. The Mortgage constitutes a valid and binding first priority lien on the Yakaputz Property enforceable in accordance with the terms of the Loan Documents.

21. Plaintiff is now the owner and holder of the Note and Mortgage pursuant to the Endorsement and the Assignment.

22. Pursuant to the terms of the Mortgage, Yakaputz assigned to the holder of the Mortgage all of its existing and future right, title, and interest in and to the leases affecting the Yakaputz Property and to the rents, issues and profits issuing therefrom (collectively, the "**Rents**").

23. Under the terms of the Mortgage, Yakaputz further granted to the holder of the Mortgage as mortgagee and secured party, and to secure the indebtedness evidenced by the Note, a security interest in those portions of the Yakaputz Property that are or may be subject to the New York Uniform Commercial Code provisions applicable to secured transactions. Such security interest was duly perfected by the timely filing of an executed UCC-1 financing statement. The term Mortgage as used in this Complaint includes that security interest.

24. Pursuant to that certain *Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability* attached to the Note (the "**Acknowledgement**"), Defendants have a contingent unsecured obligation to Plaintiff to pay for the 'bad act' defaults of Yakaputz under the Loan Documents. In essence, Defendants have guaranteed the payment and performance of any deficiency under the Loan Documents for the bad acts by Yakaputz or by its key principals. The Claim is based upon, among other things, this obligation.

25. The Mortgage, Note, Endorsement, Assignment, Acknowledgement and all other loan documents executed in connection with or pursuant to the loan described herein, and all interests therein and evidenced thereby are collectively referred to as the "**Loan Documents**."

26. Fannie Mae is now the owner and holder of the Loan Documents.

**Conduct Supporting Denial of Discharge and Dischargeability of Debt**

27. Before the Petition Date, Yakaputz defaulted under the terms of the Loan Documents by, *inter alia*, failing to make payments of the monthly installments due under the Note on and after February 1, 2009.

28. By written notice to Defendants as sole shareholders and officers of Yakaputz dated May 6, 2009, Fannie Mae notified Yakaputz that it was in default under the terms of the Loan Documents, demanded full payment of the entire amount past due under the Loan Documents, terminated Yakaputz' license to collect Rents, and demanded that all Rents be held in trust for Fannie Mae.

29. By written notice to Defendants as sole officers and shareholders of Yakaputz, dated May 18, 2009, Fannie Mae notified Yakaputz that it was in default under the terms of the Loan Documents, accelerated the loan, and demanded full payment of the entire amount past due under the Loan Documents.

30. Despite notice of default and acceleration and demand for payment of all sums due to the Fannie Mae, Yakaputz failed to cure these defaults after expiration of any and all grace periods permitted under the Loan Documents. As of the Petition Date, Yakaputz was indebted in the aggregate amount of $2,293,347.37 to Fannie Mae under the Loan Documents, which is the approximate amount that Fannie Mae asserted against Defendants in the Claim.

31. Fannie Mae commenced an action by filing a *Summons and Verified Complaint for Foreclosure of Mortgage* dated July 6, 2009 in the Supreme Court of the State of New York, County of Kings (the "**State Court**"), titled: *Federal National Mortgage Association, Plaintiff, against Yakaputz II, Inc. et al., Defendants*, Index No. 16763/09 (the "**Foreclosure Action**"), seeking to foreclose the Mortgage on the Yakaputz Property.

32. Plaintiff applied to the State Court in the Foreclosure Action for the appointment

of a receiver to take possession of the Yakaputz Property and to collect the Rents to ensure that the rental income is properly collected and disbursed and that the Yakaputz Property is properly protected. On October 13, 2009, the State Court entered an "**Order Appointing Receiver**", which, among other things, appointed Alan Drezin as receiver (the "**Receiver**"), and enjoined and restrained Yakaputz and its agents from leasing, renting or collecting the Rents from the Yakaputz Property. A copy of the Order Appointing Receiver is attached and made a part hereof as Exhibit B.

33. Upon information and belief, after termination of the license to collect Rents and the subsequent appointment of the Receiver and issuance of the injunction, Defendants collected Rents from November 2009 through February 2010 and possibly thereafter, and unlawfully diverted those funds from the Receiver and Plaintiff to themselves. In addition, Defendants transferred to themselves from the Yakaputz bank account the sum of $5,300 within three days before the Petition Date, while the Receiver was in place and in violation of the State Court Order Appointing Receiver and applicable state law requiring the Receiver to be the sole custodian of Yakaputz' funds, as further described below.

34. After the Petition Date, Defendants demanded that the Receiver deliver any Rents that he collected to them, and collected, used and dissipated the Rents for purposes unrelated to preserving or maintaining the Yakaputz Property or adequately protecting Fannie Mae's interests. At Defendants' Bankruptcy Code § 341(a) meeting of creditors, conducted by the Office of the United States Trustee on June 22, 2010 (the "**Creditors' Meeting**"), Defendants admitted that they collected Rents without any authority from the Yakaputz Property during the pre-Petition Date period, and collected Rents after the Petition Date. Defendants also testified that they commingled Rents received before and after the Petition Date in one account with security deposits, in unknown amounts, from Yakaputz and other properties that they own or

have an interest in through corporations similar to Yakaputz. Defendants further testified that they failed to keep the rental deposits that they received from the Yakaputz Property in segregated accounts and commingled them with funds from other sources in violation of New York General Obligations Law § 7-103.

35. At the adjourned Creditors' Meeting held on July 14, 2010, the Debtors admitted that just days before, they had withdrawn nearly $4,000 from the Yakaputz account without Court authority and used it to pay the utility bills on their personal residence. It is unclear whether those funds were used to pay pre or post-Petition Date utility bills on their residence with the Yakaputz Rents.

36. Defendants' operating report for the month of May 2010 includes a single asset real estate report for Yakaputz [ECF Doc. No. 20, Exhibit 3] and another report for Albany Commons, which is the Defendants' management company for their four Albany, New York properties, according to their Creditors' Meeting testimony [ECF Doc. No. 20, Exhibit 2]. The Yakaputz report reflects a number of highly questionable and likely unlawful transfers from the Yakaputz account. The largest was made on the Petition Date, transferring the sum of $7,000 from the Yakaputz account to the account of Albany Commons.[2] That disbursement is described elsewhere in the Yakaputz report as made for building operations (without any detail or breakdown), but the report also states that the transfer was made to "Albany Co Transfer for Constructions". Defendants testified at their July 14, 2010 adjourned Creditors' Meeting that they did not know what the use of the $7,000 was for. The Albany Commons report reflects only that on May 21, 2010, it paid the sum of $550 to "Soonah Ma Construction work for 154A Hicks Street / 195A Washington Park". The rest of the disbursements made by Albany Commons

---

[2] On May 6, 2010, two other transfers were made from Yakaputz to Albany Commons, each in the sum of $1,000.

appear to include Defendants' personal living expenses. It thus appears that nearly all of the $7,000 transferred from Yakaputz was used for Defendants' personal benefit.

37. The Yakaputz report also reflects a cash disbursement of $550 made on the Petition Date to "Construction for 254 Fort Hill". According to their bankruptcy petition, Defendants' personal residence is located at 254 Fort Hill Road, Scarsdale, New York.

38. As noted above, other cash disbursements to Defendants' personal account from the Yakaputz account include $3,200 on May 3, 2010, $1,100 on May 4, 2010, and $1,000 on May 5, 2010, all just days before the Petition Date and while the Receiver was in place and the injunction in effect pursuant to the State Court Order Appointing Receiver.

39. The Yakaputz report also shows that on May 20, 2010, $900 was transferred to "Personal Transfer to personal". Defendants testified at their July 14, 2010 adjourned Creditors' Meeting that it was not a management fee, as they received $500 on May 26, 2010 for that service.

40. Another Yakaputz report entry for May 20, 2010 shows that $300 was paid for "S. Fischman Maid Service". Defendants testified at their July 14, 2010 adjourned Creditors' Meeting that they did not know whether Ms. Fischman was paid for performing maid service at the Yakaputz Property or she received reimbursement for her personal maid service.

41. Other operating reports filed by Defendants in their chapter 11 bankruptcy case show additional Rents deposited into and disbursed from the Yakaputz account to Defendants and their other wholly owned entities.

42. Yakaputz had an obligation to use the Rents for the benefit of the Yakaputz Property and to pay its loan obligations to Plaintiff. Defendants, as key principals (i.e., sole shareholders and officers) of Yakaputz, gave assurances to Plaintiff that this would be done. Yakaputz received Rents, and Defendants diverted Rents to themselves and used them for their

own personal benefit and for other purposes not related to the Yakaputz Property or the repayment of its loan from Plaintiff.

## First Claim for Relief

### Determination of Non-Dischargeability Under Bankruptcy Code § 523(a)(6)

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of this Complaint.

44. Bankruptcy Code § 523(a)(6) states that a discharge under Bankruptcy Code § 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

45. Plaintiff terminated the license by which Yakaputz and its agents were authorized to collect Rents.

46. The State Court Order Appointing Receiver thereafter enjoined Yakaputz and its agents from collecting the Rents.

47. As sole shareholders and officers of Yakaputz, Defendants are its agents and were enjoined from collecting the Rents.

48. As sole shareholders and officers of Yakaputz, Defendants had notice and/or knowledge of Yakaputz' default under the Loan Documents, termination of the license to collect Rents, the commencement of the Foreclosure Action, and the entry of the State Court Order Appointing Receiver and the injunction therein against Yakaputz and its agents collecting Rents.

49. Defendants deliberately, intentionally and wrongfully collected Rents after termination of the license to collect Rents and the Receiver was appointed and before the Petition Date, in knowing violation of the State Court Order Appointing Receiver.

50. Defendants knew they had no right to collect Rents.

51. Defendants knew that their collection of Rents deprived Plaintiff of those funds.

52. Defendants knew at the time that they converted the Rents that Yakaputz was not paying Plaintiff for the outstanding loan.

53. Defendants converted Plaintiff's property with intent to harm Plaintiff, which gave rise to a debt that should not be dischargeable.

54. Accordingly, the Court should enter judgment for Plaintiff against Defendants declaring non-dischargeable their indebtedness to Plaintiff for the Rents that Defendants collected and converted, in an amount to be determined at trial.

### Second Claim for Relief

### Denial of Discharge Under Bankruptcy Code § 727(a)(2)(A)

55. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 54 of this Complaint.

56. Bankruptcy Code § 727(a)(2)(A) provides for the denial of a debtor's discharge when the debtor, with intent to hinder, delay or defraud a creditor or the trustee, transfers, removes, or permits to be transferred or removed property of the debtor within one year before the date of filing of the petition.

57. Defendants treated the Rents as their personal assets, disregarding any corporate formalities, the termination of the license to collect Rents, the State Court Order Appointing Receiver and the injunction provided therein in order to collect and use them for their personal benefit.

58. Between the revocation of the license to collect Rents and the Petition Date, Defendants' collection of Rents and their transfer of Rents to themselves personally or to their other wholly owned entities constituted transfers or removal of property with intent to hinder, delay or defraud Plaintiff.

59. Accordingly, Defendants' discharges should be denied.

### Third Claim for Relief

### Denial of Discharge Under Bankruptcy Code § 727(a)(2)(B)

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 of this Complaint.

61. Bankruptcy Code § 727(a)(2)(B) provides for the denial of a debtor's discharge when the debtor, with intent to hinder, delay or defraud a creditor or the trustee, transfers, removes, or permits to be transferred or removed property after the date of filing of the petition.

62. After the Petition Date, Defendants continued their pre-Petition Date practices of treating the Rents as their personal assets, disregarding any corporate formalities, in order to collect and use them for their personal benefit.

63. After the Petition Date, Defendants' collection of Rents and their transfer of Rents to themselves personally or to their other wholly owned entities constituted transfers or removal of property with intent to hinder, delay or defraud Plaintiff.

64. Accordingly, Defendants' discharges should be denied.

### Fourth Claim for Relief

### Denial of Discharge Under Bankruptcy Code § 727(a)(6)

65. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 of this Complaint.

66. Bankruptcy Code § 727(a)(6) provides for the denial of a debtor's discharge when the debtor has refused, in the case to obey any lawful order of the court.

67. The Automatic Stay Order directed Defendants:

> 6. …to immediately turnover and deliver all Rents and security deposits in their possession, custody or control, or that may come into their possession, custody or control, to the Receiver, wherever they may exist, whether in the account established by the Debtors for Yakaputz at JPMorgan Chase Bank, Account No. xxxxxx9596, or in any other account established by the Debtors for

themselves or for any entity that they control or in which they hold an interest.

       7.  By no later than September 1, 2010, the Debtors are directed to deliver an accounting to the Court, Fannie Mae and the Office of the United States Trustee for the sources and uses of all Rents and security deposits that came into their possession, custody and control after the Petition Date.

*See* Exhibit B.

    68.    To date, Defendants have willfully and intentionally refused to turnover and deliver to the Receiver all Rents and security deposits that they collected before and after the Petition Date as directed by the Automatic Stay Order.  Defendants' willful and intentional misconduct is continuing.

    69.    Defendants have willfully and intentionally refused to deliver an accounting as directed by the Automatic Stay Order.

    70.    Accordingly, Defendants' discharges should be denied.

**WHEREFORE**, Plaintiff prays for judgment against Defendants (a) under the First Claim for Relief, declaring non-dischargeable Defendants' indebtedness to Plaintiff for the Rents that Defendants collected and converted, in an amount to be determined at trial, (b) under the Second, Third and Fourth Claims for Relief, denying discharge to the Defendants, (c) awarding to Plaintiff the costs and disbursements of this action, and (d) granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York  
         April 22, 2011

WINDELS MARX LANE & MITTENDORF, LLP  
*Attorneys for Federal National Mortgage Association, Plaintiff*

By:   /s/ Leslie S. Barr  
       Leslie S. Barr (lbarr@windelsmarx.com)  
       Robert G. Wilk (rwilk@windelsmarx.com)  
       156 West 56th Street  
       New York, New York 10019  
       (212) 237-1000